34134. COCHRAN v. CITY OF ROCKMART.
34135. McMILLIAN v. CITY OF ROCKMART.

MARSHALL, Justice.

The appellants were convicted of municipal ordinance violations in the Recorder's Court for the City of Rockmart. Under § 6.04 of the Rockmart City Charter (Ga. L. 1968, p. 3224), they appealed to the Polk Superior Court. Section 6.04 of the city charter allows appeals to be taken from the Recorder's Court for the City of Rockmart to the Polk Superior Court; it further provides that an

appeal to the superior court shall be a de novo proceeding.

The City of Rockmart, appellee herein, filed a motion to dismiss the appeal in the superior court. The city argued that § 6.04 of the Rockmart City Charter is unconstitutional under Art. VI, Sec. IV, Par V of the Georgia Constitution of 1976 (Code § 2-3305), which provides that superior courts shall have power to correct errors in inferior judicatories by writ of certiorari. The city also argued that § 6.04 of the city charter, a special law, is unconstitutional under Art. I, Sec. II, Par. VII of the Georgia Constitution of 1976 (Code § 2-207), because of the existence of a general law, Code Ann. § 19-101, providing that, "The writ of certiorari shall lie for the correction of errors committed by . . . corporation courts . . . or any inferior judicatory . . ." Thus, the city's position is that under the State Constitution, a writ of certiorari is the exclusive method for securing review by the superior courts of decisions of inferior judicatories, such as recorders' courts. The superior court agreed and entered an order dismissing the appeals. This appeal is from that order. We affirm.

In *Maxwell v. Tumlin,* 79 Ga. 570 (4 SE 858) (1887), this court faced the precise question which is involved in this appeal. Maxwell had brought suit in the City Court of Bartow County against Tumlin. Upon the overruling of his motion for new trial by the trial judge, Tumlin filed a bill of exceptions to the Bartow Superior Court under a provision of the Act creating the city court allowing judgments of the city court to be reviewed by the superior court upon bills of exception (the equivalent of our present-day appeal). On appeal from the superior court, this court held that under Art. VI, Sec. IV, Par. V of the Georgia Constitution and the predecessor of Code Ann. § 19-101, it was the intent of the framers of the State Constitution and of the General Assembly to provide the writ of certiorari as the exclusive means for securing review in the superior court from judgments of inferior judicatories.

"It is manifest from the constitution and from the statutes cited, that it was the intention of the framers of the constitution, and of the legislature, to provide the writ of certiorari to the superior courts to all persons

dissatisfied with the judgments of inferior judicatories and who desire to have those judgments corrected by the superior court. The writ of certiorari is a constitutional as well as a statutory remedy. The legislature has provided by general law the manner and means for carrying out this constitutional provision. The only power and authority given by the constitution to the superior courts to correct errors in inferior courts, is by the writ of certiorari. The legislature has no power to provide other means than those prescribed in the constitution for correcting errors in inferior courts by the superior courts. Even if this were not true, the legislature having passed a general law on the subject of carrying cases from inferior courts to the superior courts by writ of certiorari, it had no power, under the constitution, to pass a special and different law for the county of Bartow." *Maxwell v. Tumlin,* 79 Ga. 570, supra, p. 572.

*Judgment affirmed. All the Justices concur, except Hill, J., who concurs specially.*

Submitted October 13, 1978 — Decided November 30, 1978 — Rehearing denied December 19, 1978.

*Marson G. Dunaway, Jr.,* for appellants.
*Stephen Malone,* for appellee.

Hill, Justice, concurring specially.

In 1965, the General Assembly enacted a modern, comprehensive revision of appellate practice and procedure insofar as appeals from the superior and constitutional city courts *to* the Court of Appeals and this court were concerned. Ga. L. 1965, pp. 18-40. The stated purpose of that Act was to provide a new procedure for appeals ". . . so as to bring about a decision on the merits of every case appealed, and to avoid dismissal of any case. . ." Ga. L. 1965, p. 18 at p. 40. (A similar revision of trial practice *in* courts of record was enacted by the Civil Practice Act of 1966, Ga. L. 1966, p. 609). To date there has been no comparable revision applicable to appeals from inferior judicatories to the superior courts and consequently much confusion continues as regards review

by the superior courts of lower court decisions. *Yield, Inc.
v. City of Atlanta,* 241 Ga. 593 (247 SE2d 764) (1978);
*What It Is, Inc. v. Jackson,* 242 Ga. 204 (1978).

In 1968 the City of Rockmart's charter was
completely revised. Ga. L. 1968, pp. 3224-3261. The
recorder's court was established and, there being no
modern Act for appeals to the superior courts, it was
provided that (Ga. L. 1968 at p. 3258) "The right of appeal
to the Superior Court of Polk County from the recorder's
court shall lie in the same manner and under the same
procedure as generally prescribed for appeals from the
Court of Ordinary [now Probate Court]."

Following the charter of the City of Rockmart,
appellant took an appeal to the superior court. There the
City of Rockmart challenged its own charter (a dangerous
if not prohibited practice), saying in effect to this citizen:
"You can't trust our city charter."

The superior court and this court find the charter
provision attacked by the city to be invalid as a special law
as to which provision has been made by a general law, to
wit: the general law providing for certiorari, Code §
19-101 et seq. Actually the charter provision simply
provided for review by a different general law, to wit: the
general law providing for appeals from the court of
ordinary (now the probate court). Code § 6-201. Since the
majority have not seen fit to consider the question of
whether a special law which chooses one general law over
another is invalidated by the other general law, neither
will I because this whole problem needs solution rather
than further analysis of peculiarities.

What does one do after losing a case in an inferior
judicatory, probate court, recorder's court, city council
court, police court, magistrate's court, mayor's court,
justice of the peace court, etc.)?[1] Appeal? Seek a writ of
certiorari? Seek mandamus or prohibition? Seek an
injunction? In *Toole v. Edmondson & Seay,* 104 Ga. 776,

---

[1]According to the Third Annual Report of the
Administrative Office of the Courts of Georgia, pp. 24, 28
(1975-1976), there are more than 2,350 of these courts
(probate and courts not courts of record).

783-785 (31 SE 25) (1898), Justice Cobb set out 14 rules to be considered in deciding whether to seek certiorari or to appeal. He did not compare certiorari or appeal to mandamus, prohibition, or injunction.

Appellant here was tried and convicted in the Recorder's Court of violating a city ordinance. In view of this court's decision in *Edmonds v. City of Albany*, 242 Ga. 648 (1978), if it is now too late to seek certiorari (see Code § 19-209), then habeas corpus (see Code § 50-101) may be available as a means of review.